UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYLENE D. WALKER,

Plaintiff,

-vs-                                                   Case No.  6:07-cv-1647-Orl-18KRS

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

_____

REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the Complaint filed by Wylene D. Walker, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits.  Doc. No. 1.  The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA).  Doc. No. 13, 15.  The matter has been referred to me for issuance of a Report and Recommendation.

I.     PROCEDURAL  HISTORY.

In May 2003, Walker filed an application for SSI benefits alleging that she became disabled on May 1, 2003.  R. 77-80.  Walker's application was denied initially and on reconsideration.  R. 23-26, 34-36.

Walker requested a hearing before an administrative law judge (ALJ).  R. 37.  An ALJ held a hearing on January 13, 2005.  Walker, who was represented by counsel, testified at the hearing. Cynthia Patterson, a vocational expert (VE), also testified at the hearing.  R. 445-70.

After considering the testimony and the medical evidence presented, the ALJ found that Walker had not engaged in substantial gainful activity since the alleged disability onset date.  R. 21. The ALJ concluded that the medical evidence showed that Walker had a cervical spine disorder and lumbar spine disorder, which were severe impairments.  *Id*.  Walker also had a history of gastroesophageal reflux disease (GERD) and adjustment disorder with mixed anxiety and depressed mood that were not severe.  R. 19.  None of Walker's impairments, or combination of impairments, met or equaled any of the impairments listed in the applicable social security regulations (the Listings).[1]  R. 19, 21.

The ALJ found that Walker had the residual functional capacity (RFC) to perform light work, meaning she could "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, a good deal of walking or standing or sitting most of the time with some pushing or pulling of arm and leg controls."  R. 21.  The ALJ recognized that Walker asserted nonexertional impairments arising from pain.  R. 18.  The ALJ found that Walker's allegations of disabling pain and limitations were not fully credible based on the lack of any restrictions imposed by her treating physicians, her favorable response following surgery and conservative management of her condition.[2]  R. 20.

---

[1]   The Code of Federal Regulations "contains a Listing of Impairments . . . specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories."  *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

[2]   The ALJ also found no medical evidence that Walker suffered from lupus or rheumatoid arthritis.  R. 20.

The ALJ found "credible" the opinion of reviewing medical consultant Donald Warren Morford, M.D., that Walker could perform light work.  R. 20.  The ALJ gave "diminished weight" to another reviewing physician who opined that Walker could perform medium work.  *Id.*

The ALJ concluded that Walker was able to return to her past relevant work as a fashion and image consultant, customer service representative, and retail sales clerk. R. 21. The ALJ relied on the VE's testimony that these positions required light exertion.  *Id.*  Therefore, he found that Walker was not disabled.  R. 22.

Walker requested that the Appeals Council review the ALJ's decision.  R. 366-69.  She submitted additional medical evidence and a brief in support of the request for review.  R. 379-444. On August 10, 2007, the Appeals Council found, after considering the additional evidence, that there was no basis for review of the ALJ's decision.  Doc. No. 8-11.

Walker filed the present complaint.  Doc. No. 1.

## II.    JURISDICTION.

Plaintiff having exhausted her administrative remedies, and the Commissioner having made a final decision, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.    STATEMENT OF FACTS.

After a complete review of the record, I find that the essential facts of record are set forth in the ALJ's decision and in the parties' memoranda.  Accordingly, I will only summarize the pertinent facts to protect Walker's privacy to the extent possible.

Walker was 46 years old on the alleged onset date of her disability.  R.  90.  She has a B.S. degree in Education.  *Id.*

Walker had previously worked in customer service and as a cashier. In this job, she walked 5 hours and stood 3 hours a day. R. 84. She lifted 20 pounds occasionally, and 10 to 15 pounds frequently. R. 85; *see also* R. 99-104, 449-50. The VE testified that Walker's past work would be classified as light duty. R. 468-69.

Walker was injured in a car accident in 1993. R. 450. She testified that she had not been able to work since 1995. R. 451.

From October 2001 to October 2004, Walker received treatment from Reginald Bowden, M.D. for complaints of abdominal pain associated with GERD, neck pain, left-sided hemiparesis, left-sided facial numbness, headaches, pain in her left side, left leg and lower back. R. 180, 187, 191, 203, 205, 207, 209, 211, 212, 214, 300, 306, 307, 309, 349, 351, 355, 358. Radiology reports showed reflux into the middle third of Walker's esophagus, but were otherwise were essentially normal. R. 191, 197, 205, 211-12, 214-18, 221.

In March 2003, Dr. Bowden referred Walker to Carlos Leon-Barth, M.D. for treatment related to her headaches. R. 192. Walker also reported neck pain, left side pain, numbness and weakness that sometimes was associated with the headaches. R. 193. Walker reported that her headache pain was not severe when she took her prescribed medication. R. 192. During his initial examination, Dr. Leon-Barth noted that Walker did not lose balance but staggered some on standing. R. 194. Motor strength, reflexes and sensory examination were normal. R. 195. Dr. Leon-Barth's impression was that Walker suffered from cervical spondylosis with minimal nerve root foraminal stenosis. R. 195. He recommended a course of physical therapy and continued use of medication. R. 196.

Following various diagnostic tests, Dr. Leon-Barth diagnosed Walker with cervical disc protrusion at C5-C6 and C6-C7 and left central pain without anatomic changes. R. 189, 323. In

September 2003, Dr. Leon-Barth released Walker from his care and recommended consultation with a neurosurgeon regarding her neck.  R. 177-78.

Meanwhile, in June 2003, Nicolas M. Bancks, M.D., prepared a physical RFC assessment based on review of Walker's records.  Dr. Bancks opined that Walker could lift upt to 50 pounds occasionally and upt to 25 pounds frequently.  She could sit, stand or walk about 6 hours a day.  He found no other limitations.  R. 146-53.

On July 16, 2003, William P. Friedenberg, Ph.D., a psychologist, examined Walker at the request of the SSA.  Walker reported that she was anxious and depressed since being involved in an automobile accident in 1993.  She reported that she could prepare simple meals, wash dishes, do some cleaning and laundry.  She was able to care for her personal hygiene.  She could drive for short distances due to pain and restricted range of movement in her neck.  She attended church once a month.  Dr. Friedenberg observed that Walker's gait and posture were normal.  After administering some tests, Dr. Friedenberg opined that Walker suffered from an adjustment disorder with mixed anxiety and depressed motion, with mild to moderate impairment in memory and concentration.  R. 154-55.

Patricia A. Boger, Ph.D., opined later in July 2003, based on a review of Walker's records, that Walker would have only mild limitations in activities of daily living, social functioning and concentration, persistence and pace.  R.156-69.  In December 2003, Alejandro F. Vergara, M.D., concurred with Dr. Boger's assessment after reviewing Walker's records.  R. 227-40.

On January 27, 2004, Donald Warren Morford, M.D., prepared a physical RFC assessment after a review of Walker's records.  Dr. Morford opined that Walker could lift up to 20 pounds occasioanlly and 10 pounds frequently.  She could sit, stand or walk about 6 hours a day.  She could

only occasionally engage in postural activities and only occasionally reach overhead.  She should avoid concentrated exposure to hazards.  R. 241-48.

On April 14, 2004, Kaveh Barami, M.D., performed a discectomy at C5-C6 with fusion.  R. 256-57, 261.  Two days after her surgery, an x-ray of the cervical spine showed no spondylolisthesis and no dysfunction.  R. 270.

Walker subsequently reported that she was doing well with the cervical laminectomy, but complained of left hip and left leg pain.  R. 311.  In June 2004, Dr. Bowden diagnosed lumbar radiculopathy.  R. 309.

An MRI of the lumbar spine taken in July 2004 showed a mild disc bulge and predominantly left-sided facet arthritis at the L4-5 level.  There also was a mild compromise of the left lateral recess and slight impingement on the left L5 nerve root.  There was a minimal disc bulge at the L5-S1 level with no stenosis.  R. 308.  Treatment records from July 2004 reflect that Walker reported left leg pain with occasional numbness, and low back pain.  R. 306, 307.  Subsequent doctor visits in October 2004 did not refer to leg or back pain, although she continued to take medication.  R. 300-01, 304-05. An MRI of the thoracic spine taken in February 2005 showed normal alignment and no injury.  R. 383.

In 2005, Walker complained of chronic neck pain with spasm and shoulder pain.  R. 384, 386[3], 390.  She was treated with medication.  R. 386.  In 2006, she sought treatment for hand pain, which was also treated with medication.  R. 396-97.  An x-ray of the hand was normal.  R. 401.

---

[3] Walker apparently reported a diagnosis of lupus in the past, *see* R. 386, but the medical records do not reveal such a diagnosis.  Walker also testified that she had rheumatoid arthritis, *see* R. 454, but there is no diagnosis of this impairment in the medical records.

The medical records do not show that any treating professional recommended limitations on Walker's physical activities. *See also* R. 461 (Walker testified that she had not discussed her ability to work with Dr. Bowden).

At the ALJ's hearing, Walker testified that she has problems on the entire left side of her body and occasional sharp headaches. R. 452-53. At times, the pain was so severe that she could not stand to wear clothing. R. 453. She further testified that since the surgery, she had problems turning her neck and basically needed to keep it in a stable straight position. R. 458. She also could not use her left arm due to pain, weakness and shaking. R. 453. Walker testified that she could sit for 15-20 minutes without having to change position, could stand 10-15 minutes, could drive short distances, could barely walk, and could lift up to 10 pounds. R. 462-64.

Walker took a number of medications. R. 460-61. Some of the medications caused the side effect of stomach irritation. R. 462. Some of her pain medication causes her to oversleep. R. 466. She had problems sleeping at night. R. 466-67. Walker spent the majority of her day in bed or trying to sit. R. 463. She was able to dress herself and fix breakfast and lunch, but she did not cook dinner. R. 464. She did not perform household chores except for grocery shopping. R. 465-66.

## IV.   STANDARD OF REVIEW.

To be entitled to SSI benefits, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 416.920(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

-8-

The SSA's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision.  *Dyer*, 395 F.3d at 1210.  The court may not reweigh the evidence or substitute its own judgment.  *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).  Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## V.   ANALYSIS.

Walker argues that the ALJ made two errors.  First, she contends the ALJ erred in assessing her.  Second, she contends the ALJ erred in failing to present proper hypothetical questions to the VE. These are the only issues I will address.[4]

### A.   Walker's Credibility.

Under the pain standard followed in this circuit, the Commissioner "must consider a claimant's subjective testimony of pain if [he] finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from the condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The ALJ complied with the pain standard as he implicitly recognized that Walker suffered from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, but that Walker's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible.  R. 20.

When, as here, the ALJ discredits the claimant's subjective testimony, he "must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62.  Walker argues that she suffered from nonexertional impairments arising from pain and side effects of medication.  The ALJ credited Walker's complaints in part, and limited her ability to lift.  R. 20.

With respect to his finding that Walker overstated the degree of her functional limitations, the ALJ cited to the lack of any restrictions imposed by her treating physicians, the lack of any

---

[4] The parties were advised that issues not specifically raised would be waived.  Doc. No. 14 at 2.

hospitalization following her surgery, the lack of any emergency room visits related to pain, the lack of any recommendation for additional surgery, and the fact that only conservative treatment has been required. *Id.* All of these findings are supported by substantial evidence in the record, as summarized above.

Walker argues the ALJ erred in failing to develop the record as required by SSR 96-7p. In particular, Walker contends that the ALJ failed to consider the following factors in assessing Walker's credibility:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Although the ALJ does not discuss all of these factors in his opinion, a review of the hearing transcript reflects that he adequately developed the record regarding these factors. The ALJ's conclusion that Walker was not fully credible clearly was based on a review of the entire record, which is the purpose of SSR 96-7p. *Id.*, at *1.

Because the ALJ considered all of the evidence in the record, followed the applicable law, and articulated reasons supported by the evidence to support his credibility finding, Walker's first assignment of error is unavailing.

B.    <u>VE Testimony</u>.

Contrary to Walker's argument, the ALJ did not ask the VE to render an opinion regarding whether Walker could return to her past relevant work.  Rather, the ALJ only asked the VE to testify regarding the exertional demands of Walker's past relevant work.

There is no requirement for an ALJ to use VE testimony to determine whether a claimant can perform her past relevant work at step four of the sequential evaluation process.  *Hennes v. Comm'r of Social Sec. Admin*., 130 Fed. Appx. 343, 346 (11th Cir. 2005)(citing  *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir.1990)).  The regulations permit an ALJ to use an expert's services at step four "because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.'"  *Id*.(quoting 20 C.F.R. § 404.1560(b)(2)).  This is precisely the manner in which the ALJ used the VE's services.  *See id*.[5] Because the ALJ did not ask the VE to render an opinion regarding Walker's ability to perform her past relevant work, there was no need for the ALJ to present a hypothetical question to the VE outlining Walker's functional capacity.  Accordingly, this assignment of error is also unavailing.

---

[5] As the ALJ determined that Walker's mental limitations were not severe, and Walker does not challenge that determination, the ALJ did not err in failing to ask the VE about the mental demands of Walker's past relevant work.

## VI.     RECOMMENDATION.

For the reasons stated above, I recommend that the Court affirm the decision of the Commissioner, direct the Clerk to enter judgment in favor of the Commissioner and against Wylene D. Walker, and thereafter to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 13, 2008.

*Karla R. Spaulding*  _____

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy